UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ARRON BROOKS,                )
                             )
    Plaintiff                )
                             )
v.                           ) 1:11-cv-00090-NT
                             )
PATRICIA BARNHART, et al.,   )
                             )
    Defendants               )

# RECOMMENDED DECISION

Arron Brooks, an inmate at the Maine State Prison, alleges that during a search of his cell on September 27, 2010, corrections officers escorted him from the cell and subjected him to a violent assault. According to the allegations in Brooks's complaint, he was handcuffed, while offering no resistance, and then slammed face first against a steel grated door, sprayed with a large amount of pepper spray, and beaten in the head, rendering him unconscious. Brooks alleges that he had two black eyes and head gashes and that his injuries were serious enough that he was taken to an outside hospital for treatment. The defendants have now moved for summary judgment. I recommend that the Court grant their motion based on Brooks's failure to exhaust administrative remedies.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). By local rule, summary judgment facts are introduced by means of "a separate, short, and concise statement of material facts," which statements must be supported by record citations. D. Me. Loc. R. 56(b), (c). The Court's review of the record is guided by the moving party's statement, the non-moving party's opposing statement, including any additional

statement, and the moving party's limited reply statement. D. Me. Loc. R. 56(b), (c), (d). Appropriate record sources include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Brooks is entitled to have the summary judgment facts considered in the light most favorable to his cause. Wilson v. Moulison N. Corp., 639 F.3d 1, 6 (1st Cir. 2011). If the Court's review of the record reveals evidence sufficient to support a judgment in favor of Brooks on one or more of the claims, then there is a trial-worthy controversy and summary judgment must be denied to the extent there are supported claims. Unsupported claims are properly dismissed. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

In the context of prisoner litigation in this District, special care must be taken with a prisoner's *pro se* nonconforming filings in opposition to a motion for summary judgment. This Court has observed that a prisoner's nonconforming summary judgment submission should be reviewed by the Court and facts set forth in a verified complaint or prisoner affidavit should be considered when examining the entire summary judgment record. Clarke v. Blais, 473 F. Supp. 2d 124, 128 (D. Me. 2007). Accordingly, I have seriously considered Brooks's submissions, including the statement set forth in his verified complaint affirmed under penalty of perjury (Doc. No. 1) and the content of the various exhibits he has filed. However, to the extent Brooks has made unsupported allegations in unsigned documents, I have not viewed this material as properly generating disputed issues of fact that would prevent the entry of summary judgment. It is well-settled in this Circuit that a *pro se* litigant is not exempt from compliance with procedural

rules. Demmons v. Tritch, 484 F. Supp. 2d 177, 182 (D. Me. 2007) (quoting Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) ("We have held consistently that *pro se* status does not free a litigant in a civil case of the obligation to comply with procedural rules.") and Posadas de Puerto Rico, Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988) ("We realize that appellant appeared *pro se* below and his affidavit should be construed liberally for this reason. Nonetheless, even a *pro se* litigant must meet the specificity requirement of Federal Rule 56, at least when the litigant becomes aware that specific facts must be provided to defeat a motion for summary judgment.") (citations omitted)).

**MATERIAL FACTS**

*Defendants' Version*

The defendants have filed a fourteen-paragraph statement of material fact, supported by appropriate record citations consisting of the affidavits of seven different individuals with personal knowledge of facts which they have affirmed. (Doc. No. 26.) According to the defendants, the facts material to this Court's determination are the following:

Defendants Nathan Staples, Benjamin Fancy, Dennis Palmer, and Chase Craig are corrections officers employed at the Maine State Prison, and they were so employed on September 27, 2010. (Id. ¶ 1.) These four individuals were assigned to work in the Special Management Unit on that day, and Plaintiff Arron Brooks was housed there. (Id. ¶ 2.) At approximately 5 p.m., the officers were conducting a search of each cell on the B-wing lower level corridor of the Special Management Unit. (Id. ¶ 3.)

In order to search Brooks's cell, the officers first secured his hands behind his back through the slot in his cell door with handcuffs and then removed Brooks from his cell into the corridor. (Id. ¶ 4.) Officer Fancy entered Brooks's cell to search it. Officer Craig was in the

process of handcuffing the prisoner in the next cell. Officers Staples and Palmer were guarding Brooks. (Id. ¶ 5.) Brooks became verbally abusive toward Fancy. Fancy directed Staples and Palmer to remove Brooks from the corridor to an interview room. (Id. ¶ 6.) Officer Palmer held Brooks by his right arm, and Officer Staples held Brooks by his left arm, and they started to walk him down the corridor. Brooks began to resist the officers physically by pushing back with his feet while they were trying to walk him down the corridor. (Id. ¶ 7.) When they reached the end of the corridor, which is secured by a grated, steel door, Brooks lifted his foot and pushed backward against the door, causing both himself and Staples and Palmer to lose balance and fall against the corridor wall and to the floor. (Id. ¶ 8.) Brooks immediately started bucking, kicking and contorting his body in an attempt to throw the officers off of him. Palmer attempted to apply pepper spray to Brooks's face but missed and hit Staples instead. The officers struggled to restrain Brooks, and they repeatedly told Brooks to stop resisting. (Id. ¶ 9.)

Other officers arrived on the scene, and one of them applied a short burst of pepper spray to Brooks's face. At that time, Brooks stopped resisting, and the officers were able to secure him with a four-point restraint device and remove him to a receiving cell. (Id. ¶ 10.) During this incident, the defendants did not strike Brooks on the head or anywhere else. They were only attempting to restrain Brooks, who was resisting their attempt to remove him from the corridor. (Id. ¶ 11.)

At the time of the incident, the Department of Corrections had in place a grievance policy (Policy 29.1) that covered, among other things, prisoner grievances concerning excessive use of force by guards. (Id. ¶ 12.) The grievance policy prescribes a three-step grievance procedure. These steps consist of a review and investigation by the facility's Grievance Review Officer; a second level review by the Chief Administrative Officer of the facility; and a final review by the

Commissioner. (Id. ¶ 13.) Brooks did not file a third level grievance appeal with the Commissioner's office relating to any event that occurred after September 1, 2010. (Id. ¶ 14.)

*Plaintiff's Version*

Brooks did not comply with Local Rule 56 and the defendants' statement of material facts would ordinarily be deemed admitted. Brooks did file an unsigned response to the motion and he attached to the response various exhibits, most notably a September 30, 2010, grievance form which indicates that he did file a first level grievance regarding this incident. Brooks also filed a verified complaint, signed under penalty of perjury, which recounts a very different version of the events in the prison corridor on September 27, 2010. According to Brooks, he behaved in a respectful fashion and remonstrated with the officers about not destroying his property. He was handcuffed with his hands behind his back and stumbled as he was escorted down the hallway. Then the officers slammed his face against a steel grated door and then slammed him to the floor face first while still wearing handcuffs. Brooks said he posed no threat to the officers and was sprayed in the face with a whole can of pepper spray. After being sprayed with the pepper spray, Brooks was beaten in the head repeatedly until rendered unconscious. Brooks received two black eyes and head gashes and received treatment at a local hospital. (Doc. No. 1, p. 3.) Brooks does not mention Warden Barnhart in his verified complaint, other than to name her as a defendant.

    The verified complaint was accompanied by various exhibits identified as follows:

    (1) A cover letter from a prison document preparer (Doc. No. 1-1);

    (2) A To Whom It May Concern missive, authorized by an unknown individual, about the Brooks incident of September 27 (Doc. No. 1-2);

    (3) A letter from Brooks's attorney written on October 12, 2010, mentioning the incident and also inquiring about prison classification issues (Doc. No. 1-3);

5

(4) A statement by Brooks again describing the events of September 27 (Doc. No. 1-4);

(5) An unsworn statement from another prisoner describing what he observed at the time of the incident (Doc. No. 1-5);

(6) A letter from Brooks's aunt to an individual seeking help as a result of the September 27 incident (Doc. 1-6); and

(7) A client grievance form filed by Brooks on October 10, 2010, and complaining about the denial of access to writing materials from September 27 to October 4, 2010, (Doc. No. 1-7).

None of these exhibits is in a form which would be admissible for purposes of the pending summary judgment dispute, but even if the Court were to consider them, they do not shed any light on the dispositive issues connected with this motion.

*The Defendants' Reply*

As Brooks failed to comply with Local Rule 56, the defendants were somewhat hamstrung when filing a reply statement of fact. They did provide an additional affidavit from Scott Drake clarifying that Brooks filed an initial grievance, which Drake investigated and ultimately responded to with a denial of the grievance complaint, finding that the use of force had been "appropriate to the resistance offered by Mr. Brooks on that occasion." (Doc. No. 30-1.) That decision was communicated to Brooks on December 22, 2010, well outside of the time period set forth in the grievance policy. (Doc. No. 30-4.) The defendants also responded to Brooks's assertions about the Chase Craig affidavit by filing a scanned copy of the exhibit which demonstrates that the concerns expressed by Brooks about the validity of the affidavit are explained by a clerical error. (Doc. No. 30-5.) In their reply, the defendants reiterate that Brooks failed to complete the grievance process by proceeding to a level 3 grievance as outlined in DOC Policy 29.1, submitted with the original motion. (Doc. No. 26-6.)

**DISCUSSION**

The Defendants have offered three reasons why they claim they are entitled to summary judgment: (1) Brooks failed to exhaust available administrative remedies, and his complaint should be dismissed pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e; (2) on the undisputed facts, defendants Palmer, Staples, Fancy, and Craig acted with the intent to subdue Brooks and did not act with malicious intent solely to cause harm to Brooks; and (3) Defendant Barnhart cannot be held vicariously liable for the alleged actions of the other defendants. (Mot. Summ. J. at 1, Doc. No. 25.) I address their arguments in reverse order.

*The Claims Against Warden Barnhart*

Brooks "clarifies" in his response to the motion for summary judgment the theory behind his claims against the warden. According to Brooks, Barnhart is "legally held responsible and accountable for excessive force used under her authority and discretion." (Pl.'s Response at 3, ¶ 10, Doc. No. 29.) It sounds very much like a theory of *respondeat superior* to me. If Brooks believes that Barnhart has personal liability, his complaint and supporting evidence states neither a claim for supervisory liability nor a claim in connection with Barnhart's role in the actual incident in the prison corridor. Brooks's discontent with the results of his grievance process does not support a stand-alone 42 U.S.C. § 1983 claim. See Lamon v. Junious, No. 1:09-cv-00484-GSA PC, 2009 WL 3248173, *4-5 (E.D. Cal. Oct. 8, 2009). Nor can Barnhart be held liable as the supervisor of Staples, Fancy, Palmer, and Craig under § 1983 on a theory of *respondeat superior*. The First Circuit has observed: "It is by now axiomatic that the doctrine of *respondeat superior* does not apply to claims under section 1983." Gaudreault v. Salem, 923 F.2d 203, 209 (1st Cir. 1990). In order to hold a supervisor liable Brooks would have to allege and generate evidence to support a claim that Barnhart either directly participated in the offending conduct or

7

engaged in conduct that could be said to amount to condonation or tacit authorization of the conduct. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). Warden Barnhart is entitled to judgment on the complaint because neither the complaint nor the summary judgment record contains factual content that would allow this Court to draw the reasonable inference that Barnhart is liable for the misconduct alleged as required under Ashcroft v. Iqbal, 556 U.S. 662 (2009).

***The Primary Claims Against Staples, Fancy, Palmer, and Craig***

Brooks's sworn version of the events of September 27, 2010, as contained within his original complaint, if accepted as true, would certainly set forth allegations that would preclude the entry of summary judgment, even based upon a claim of qualified immunity for the officers. See Clark v. Blais, 473 F. Supp. 2d at 126. In fact, in some respects this case is a stronger case than Clark's because, at least on this record, it is not disputed that Brooks received substantial injuries in the resulting melee. Like Clark v. Blais, no "record scouring" is necessary in order to quickly discern the disputed facts about what happened in the hallway. Id. at 130. Brooks did not testify at deposition in this case, but the defendants' failure to engage in such discovery—or if they did engage in such discovery, to include it with the record—should not be used against Brooks. He has presented a straightforward version of the events in a verified complaint and has responded to the summary judgment motion within the parameters of what might be expected of an incarcerated litigant.

If a fact finder believed Brooks's version of events, he or she might well conclude that force was used against Brooks "maliciously and sadistically for the purpose of causing harm." Pattern Jury Instructions, Hornby, J., § 2.1, Excessive Force in Violation of the Eighth Amendment: Injury to an Inmate by a Corrections Officer (citing Hudson v. McMillian, 503 U.S.

8

1, 6-7 (1992)). On this record I would not recommend granting summary judgment against the four primary defendants on the excessive force claim on the basis of the officers' intent as requested in the motion.

*Failure to Exhaust Administrative Grievance Policy 29.1*

The Prison Litigation Reform Act states:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(1)(a). The exhaustion requirement applies to claims that corrections officers used excessive force. Cruz-Berios v. Gonzalez-Rosario, 630 F. 3d 7, 10 (1st Cir. 2010) (citing Porter v. Nussle, 534 U.S. 516, 532 (2002)). If Brooks failed to exhaust available administrative remedies, that failure can be dispositive of his claims in the case. Id. at 16. It is defendants' obligation to prove that Brooks failed to exhaust his available administrative remedies because it must be proven as an affirmative defense to the complaint. Jones v. Bock, 549 U.S. 199 (2007). Exhaustion, in the context of the PLRA, means something more than simply ignoring the agency's procedural rules and thereby bypassing the administrative machinery and proceeding directly to court. Woodford v. Ngo, 548 U.S. 81 (2006). The summary judgment record conclusively establishes that Brooks began the administrative grievance process at the prison, but did not fully complete all administrative appeals by filing a level three grievance with the Commissioner as required by Policy 29.1. None of the material filed by Brooks suggests that there is any dispute of fact about whether or not Brooks proceeded with a level three grievance. He did not.

Non-compliance with administrative procedural rules, however, is not a simple talisman that automatically resolves the question of whether there has been exhaustion of available

9

remedies. As courts have observed, prison officials themselves sometimes play fast and loose with their own grievance policies.[1] At least five circuit courts of appeal have determined that "the exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority." Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011); see also Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), abrogated on other grounds by Jones v. Bock, 549 U.S. 199 (2007) ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."); Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004) ("when a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action."); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). Of course, none of these cases addresses the issue raised by this case, where plaintiff failed to complete the three levels of the grievance process after receiving a definitive, albeit tardy, response following an investigation at the prison level. However, in an unpublished *per curiam* opinion, a panel of the Third Circuit Court of Appeals has held that a prisoner's excessive force claim is properly dismissed for failure to exhaust where the plaintiff fails to demonstrate that he carried an unsuccessful grievance through the final level of administrative review. McCullough v. Miller, 330 Fed. Appx. 330, 332 (3d Cir. 2009).

---

[1] For instance, in Brooks's case, Policy 29.1 provided that the grievance review officer "must respond to the complaint, in writing, not later than twenty (20) days following receipt of the grievance." (Policy 29.1 at 6, ¶ 9, Doc. No. 26-6.) According to the submissions made by the defendants, the grievance was filed on October 8, 2010, and the response received on December 22, 2010, along with a written apology for the delay. The response was just one week shy of being two months overdue. (See Doc. Nos. 30-2 & 30-4.) I am not in any way suggesting this fact as a criticism of the prison officials who obviously conducted an investigation into the situation through the report prepared by Unit Manager Charlton and filed at Doc. No. 30-3, which investigation was apparently not completed until December 20, 2012. I simply point out that Policy 29.1 is not always followed in all respects by prison authorities. I have previously cited to Justice Breyer's concurrence in Ngo wherein he notes that the PLRA's proper exhaustion requirement is not absolute. Defendants may in some circumstances be estopped from asserting non-exhaustion as an affirmative defense. See Parker v. Robinson, No. 1:04-cv-00214-B-W, 2006 WL 2904780, 2006 U.S. Dist. Lexis 64107 (D. Me., Mag. J. Rec. Dec., Sept. 6, 2006, adopted Oct. 10, 2006).

District courts in California have drawn similar conclusions.  See, e.g., Bencom v. Urquides, No. ED CV 10-01671 ODW (RZ), 2011 U.S. Dist. Lexis 116547, *5-6, 7-8 (C.D. Cal., Mag. J. Rec. Dec., Oct. 7, 2011, adopted Oct. 7, 2011);  Cato v. Avila, No. 1:06-CV-01781, 2008 U.S. Dist. Lexis 73481, *7-11, 2008 WL 3540699, *3-4 (E.D. Cal., Mag. J. Rec. Dec., Aug. 11, 2008, adopted Sept. 16, 2008).  The PLRA, which requires administrative exhaustion, favors the defendants on this record.

Brooks has not offered any explanation for his failure to complete the grievance process. He has submitted some exhibits to support the contention in his unsigned memorandum that "officers callously hinder inmates access to obtaining grievance forms at the Maine State Prison." (Pl.'s Resp. at 2, ¶ 4.)  The only point Brooks makes is that he did file a level one grievance, a fact that is conclusively established on this record.  Brooks does not claim that he was personally prevented from completing the grievance process.  He offers absolutely no explanation as to why he was able to get the necessary form to start the grievance process, but did not complete the process.  In these circumstances it is difficult to imagine how Brooks envisions avoiding the consequences of his failure to exhaust administrative remedies.

## Conclusion

For the reasons set forth above, I RECOMMEND that the Court GRANT Defendants' Motion for Summary Judgment (Doc. No. 25)

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 15, 2012                    /s/ Margaret J. Kravchuk
                                  U.S. Magistrate Judge